This morning is 15-1-2-2-1, NRA Midwestern Pet Foods. The issue before the Court today is whether the TTAB committed an error in affirming the final refusal of two applications. One is wholesome, which was refused under Section 2E1, asserting that the mark is merely descriptive of the goods. And the other is for sport mix wholesome, in which there was a disclaimer under Section 6A required of the word wholesome. So the question is whether adding the F to a word which we all agree is a descriptive word somehow changes it, right? Yes. Yeah, I think quite simply that's accurate. So why is there not substantial evidence to support the Court's finding? Well, if you look at what the Board relied upon, the Board relied upon a dictionary definition of wholesome, a number of third-party registrations included the word wholesome, and some other internet evidence. There is evidence that wholesome is, in fact, descriptive of perhaps a pet food or a quality of pet food. But there is no evidence. There's not one single evidence of the word wholesome. In fact, there is no such word. And so there's no dictionary definition of wholesome. There's no third-party use of wholesome. It's just, frankly, not a word. And so once the office put in that evidence, which was their burden to do, we submitted an expert report from a linguist who looked at the word wholesome and concluded probably not difficultly because there's no such word in the English language. He went through a number of linguistic tests. He did a morphological test, a syntactic test, and a semantic test and concluded that this is not an English word. And in fact, what the applicant here had done is created a word that causes some thought and some sort of mental gymnastics, so to speak. And in fact, if you look... So I guess I'm having a hard time. Is your view that as a matter of law, if it's a word that is a made-up word that doesn't itself in its entirety appear in a dictionary, then automatically it's not descriptive? Well, I don't know that I would go so far as to say that as a matter of law, but I think in this particular instance, based on the record that was before the board, that the expert tipped the scale the other way and created some form of doubt as to whether this word was or wasn't descriptive. And in fact, the expert's language says very much it's essentially mental gymnastics. That's sort of the fundamental touchstone of what we decide is whether it's suggestive or descriptive. And so, at least in this instance, Judge, I believe that that certainly is the case. But we're not reassessing the evidence. Isn't the board's finding that merely adding the S to the word wouldn't cause the customers to perceive it any differently enough substantial evidence to support the decision? Well, I mean... They have to get an expert to come in and say that? Well, I mean, certainly the board, obviously, is substituting their own judgment for that of the expert that appeared on behalf of Midwestern. I mean, there is no real evidence. I mean, look, I understand that adding an S typically is not that big a deal. Normally it's just making a plural form of a word. What kind of evidence would you have the board get to say that customers would perceive wholesome to mean the same thing as wholesome? Well, I mean, it's a tough one for the office. I realize they have limited resources, but normally I suppose you would either have an expert or you would do a survey to try to determine that. I don't believe that the office... And what was the expert's testimony on? What was his expertise? Did it have to do with what a normal, average customer of pet food would understand the term to mean? Well, I don't believe, Judge, that he qualified himself in that way. He qualified himself as an expert, a linguistic expert, in what people perceived the English language to mean. And if you read his opinion, his opinion is that this is a word that someone's confronted with. In fact, it causes some puzzling and some thought process. And in fact, the office, in their brief, cites an article by James Harbeck that suggests that this is not an incredibly unusual marketing ploy, that in fact, clever people do transform adjectives to nouns and use them as brands. And so it's that clever turn. Let me ask you sort of a different question. If the term was wholesome, wholesome without the S, but the S-O-M-E at the end was changed to S-U-M, so you've still got the same word, wholesome, but you're reading the word wholesome and it's different than one you would find in the dictionary, what would your view be? Well, I think that the phonetic equivalent, I think that you would probably likely conclude that that would be descriptive, I think, under Section 2E1. I don't think that the changing of the spelling there necessarily... So you're saying that wouldn't confuse the consumer, even though it's a different word than wholesome, but adding the S, it would be clear to a consumer that it's no longer descriptive? That appears to have been the doctrinal following of the office with respect to those kinds of spelling changes. But we've certainly made a record, a number of third-party registrations, which are somewhat similar. For instance, meaties, what's the commercial impression of that mark? It's clearly meat. I mean, is it really any different? I mean, the idea of a suggestive mark is to, in fact, convey the commercial impression of a descriptive term, and that's the whole part of marketing. I mean, that's what the ploy is intended for. You know, pet essentials. I mean, it's the same thing, essentials. And I realize, obviously, that the office isn't bound by those prior determinations, although, of course, the office also then points out the ones where wholesome is, you know, we can do it, but you can't. But there are registrations here that are really very similar, or smalls, S-M-A-L-L-Z. I mean, has anyone questioned that the commercial impression of that is that it's something small? I think not. And so, this is really very, very much the same thing. And so, you know, we're looking for the court to, you know, turn this back to the office. There are a couple cases that the government relies on pretty thoroughly. The Bayer case with respect to aspirina, and the Lightweights case, and those cases are really quite, quite different than this particular case. Why are they different? Well, with respect to aspirina and Lightweights, both of them were actually in the dictionary. They are actual English words, whereas wholesome is not. There were actually trademark registrations for aspirina. For Lightweights, there had been a prior registration in which Lightweights had been disclaimed, which is, as the court knows, is an admission of descriptiveness. And so, those two particular cases which the government relies on quite heavily in its briefing are really quite different here, and can be distinguished readily. Again, the real thing here is that the other difference is, of course, is this expert opinion, which would hope that it tips the scale back. And so, it creates some doubt as to whether this mark is merely descriptive. And so, our suggestion, of course, here is that the office didn't take into consideration and give deference to that expert's opinion with respect to this, unlike the Bayer case with aspirina, or unlike the case with Sperry with respect to the Lightweights case. And if you look to the actual expert opinion, again, it doesn't quite track exactly the language from the statute, but if you look at what he says... It's the sixth page of the expert report, which is in the record... You mean the last... This is a six-page report? It's the sixth page of Dr. Leonard's report. Page 342. Thank you, Your Honor. And it's paragraph 20, where he says, The noun wholesome is an invented word that has novel, morphological, grammatical, and semantic value. It's made clear by the virtue of the fact that no dictionaries contain the noun wholesome or wholesomes. More importantly, wholesomes cannot be found in any dictionary at all, and consequently cannot be said to have any accepted meaning. For English, and this is the most important part here, for English-language speakers, linking the adjective wholesome to wholesomes would require a leap of metaphorical grammatical understanding to coin a rather awkward but illustrative term to process a new lexical item that, in the first glance, may appear to be an adjective flouting the rules we all use to understand the English language. And that's the exact sort of black-letter law that we talk about when the office looks at something as to whether it's merely descriptive or not. It's that mental leap. And so this is what this expert has said from a perspective of people who understand the English language, which obviously would certainly encompass those who are pet food consumers and purchases of pet food. And so, again, he finally concludes that based on the foregoing, it's my opinion that the word wholesomes is a newly created noun with no accepted meaning. OK. Why don't you save the rest of your rebuttal, and we'll hear from you. Thank you, Your Honor. Ms. Walker. May it please the Court. This case is all about the letter F. As Chief Judge prose— Would this case be different if they'd used Z instead of S? I don't believe so. But you've allowed trademarks where they've added a Z instead of an S to come up with the same kind of meaning, right? Well, there's certainly nothing in the record where wholesomes with a Z has been allowed. And those other applications that were cited both in the brief and in the record below— and let me just mention that for the additional registrations that Midwestern has added, we ask that the Court not take judicial notice. But even if the Court were to take judicial notice of those other registrations, they're not relevant for the inquiry here. The inquiry here is based on a specific factual record as to the word wholesome. And for the word wholesome, there is nothing in the record that establishes that consumers are going to understand applicants marked wholesome as to mean anything other than the admittedly descriptive word wholesome. Applicant points substantially to the expert declaration, but nothing in that expert declaration establishes that consumers are going to take away anything other than the descriptive meaning. Counsel just pointed to paragraph 20 of that declaration, in which the expert has testimony that there's no accepted meaning, but the no accepted meaning language means that there's no dictionary definition. And we know there's no dictionary definition. So what does he need to do? What does someone need to do? Do they need to come up with a consumer survey that says what you say? I believe in this case that that's what would need to be shown. They need to make some showing that consumers understand that wholesome is the source, right? That it points to the source of the good. But why isn't that inferrable from paragraph 20? The linguist says every native English speaker would immediately hear this, intuitively understand it's being asserted as a noun. We don't, in the English language, use this word as a noun. It therefore is a clever way of naming something from somebody who had the cleverness to brand its product that way. Well, perhaps you can take away that consumers would understand it to be a noun, but the expert doesn't say. They have to understand it. I'm sorry, they understand it as a noun. And that it isn't a noun in ordinary English usage. So something funny is going on here. Whatever that funny thing is that's going on here, though, doesn't take away the underlying descriptive meaning. There's nothing that the expert points to that says because it's now a noun, it somehow is devoid of all meaning. And the only meaning in this... But let me just focus on this. It seems to me quite a lot of loose discussion in this field is made loose by not putting the word mere in front of descriptive. Endless numbers of perfectly legitimate trademarks are partially descriptive. It has to be the case. Lots and lots and lots of names are suggesting some product quality. Why, though, is this merely descriptive when an ordinary English speaker would recognize that something odd is going on in this use of this term? Because there is no other meaning. There's no evidence in the record of any other meaning. Something coined and new. Well, except that that then says that the S effectively camouflages what is established by the record and what Midwestern concedes is otherwise a nearly descriptive term. So if you had a situation where the change in the word was such that the nearly descriptive term wasn't immediately obvious, as it is in this case, that would be a different case. But here, the addition of the letter S simply cannot camouflage the admittedly descriptive term. And they have put forth no evidence that there is another meaning that consumers are going to take away. And I do believe that this Court's decision in Bayer is quite instructive on this point. Because in Bayer, this Court looked at the substantial similarity of the two words and concluded that when you look at the appearance, sound, and meaning of the two terms, that that alone can be substantial evidence of the nearly descriptive nature. So in that case, this Court found that aspirina was sufficiently similar to aspirin and that that sufficient similarity was substantial evidence. The same is true here. The only difference is the S. And the Court properly followed this Court's guidance in Bayer and found that the Midwestern's mark is sufficiently similar to – I'm sorry, Midwestern's mark, Wholesome's mark is sufficiently similar to the word Wholesome to find – noticeable word form transformation. Basically, paragraph 20 of the expert. Did the Board say, yes, we get that, but it's not enough for the following reasons. The Board quoted from the expert's declaration, including paragraph 20 and page 6 of its decision, and then addressed the expert's declaration at the end of its opinion on page 12. So it did discuss the expert's declaration in the context of all the evidence of the record and found that the expert's declaration did not constitute evidence that otherwise presented another meaning for the mark. That the meaning of the mark that consumers are going to perceive is the admittedly descriptive one, the one for the word Wholesome. Because substantial evidence here supports the Board's finding that Wholesome is merely descriptive of pet food, this Court should affirm the Board's refusal to register applicant's marks. The Court has no further questions. I'll yield the balance of my time. Thank you. Thank you. If I might just conclude. I think that the point that was raised is quite a good one, which is that the In Regulae case, which establishes sort of the merely descriptive test, says merely and immediate. And that is, in this instance, based on the record, not the case. The expert clearly indicates that that's not how consumers are going to perceive this language. If you haven't read the article that the office actually put into its brief, a reference and a footnote, this James Harbeck article is actually quite interesting. Because he talks about how people come up with – in fact, he came up with some things that our expert didn't talk about. He talked about the bioassociation of changing an adjective to a noun is something that tickles your brain. Again, what I would suggest to the Court is the touchstone of the difference between a suggestive mark and a descriptive mark. He goes on to say it's jumping from one meaning to another. It lends an adjective to a thingness, which of course, again, is sort of the touchstone of a trademark emanating a source, a thing, this particular product. He goes on to say it's a quality turned into a thing. Again, I would urge the Court to look at that and to look at the record that was there. There is no record of wholesomes being used by anyone or anything. For these reasons and the reasons that we've set forth in the record and in our briefing, Midwestern Pet Food respectfully requests that the Court reverse the Board's affirmation of the office's final refusal to register wholesomes and also to remove the disclaimer requirement for the sport mix wholesomes marks. Thank you. We thank both counsel and the case is submitted. That concludes Dr. Stevens. Thank you. All rise.